IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| NATALIE LYNN SOUCIE, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 7:22-cv-00552 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| VIRGINIA UTILITY PROTECTION | ) | By:   Hon. Thomas T. Cullen |
| SERVICE, INC., d/b/a "VA 811", | ) |        United States District Judge |
| | ) | |
| Defendant. | ) | |

Plaintiff Natalie Lynn Soucie ("Soucie") alleges that Defendant Virginia Utility Protection Service, Inc., d/b/a "VA 811," discriminated and retaliated against her in violation of the Family Medical Leave Act and the Americans with Disabilities Act. (Compl. [ECF No. 1].) This matter is now before the court on VA 811's motion to dismiss Soucie's complaint and compel arbitration. (ECF No. 16.) Because the parties agreed to arbitrate their dispute, the Federal Arbitration Act requires that the court grant VA 811's motion to compel arbitration and dismiss Soucie's complaint.

## I.

### A.  PROCEDURAL HISTORY

VA 811 filed its first motion to compel arbitration and dismiss the complaint on October 21, 2022, arguing that Soucie expressly agreed to arbitrate this dispute in a Mutual Dispute Resolution Agreement (the "Agreement" [ECF No. 17-1]). (ECF No. 5.) Soucie disputed that she had entered into any agreement to arbitrate and requested discovery on the Agreement and her purported acceptance of it. (Soucie's Br. Opp. Def.'s First Mot. at 6 [ECF

No. 8].) The court gave the parties approximately 75 days to take discovery on the issue of contract formation and provided VA 811 the opportunity to thereafter renew its motion. (Order, Nov. 8, 2022 [ECF No. 10].)

After completing this targeted discovery, VA 811 filed a renewed motion to dismiss and compel arbitration. (ECF No. 16.) After fulsome briefing (*see* VA 811's Br. Supp. Mot. [ECF No. 17]; Soucie's Opp. Br. [ECF No. 18]; VA 811's Rep. Br. [ECF No. 20]), the court heard argument on March 24, 2023. This motion is now ripe for decision.

## B. VA 811's Contentions

VA 811's President and CEO, B. Scott Crawford ("Crawford"), explained that VA 811 used the human resources ("HR") technology services of the company PolicyTech for sending employment-related documents to its employees to be received, read, and acknowledged as understood. (VA 811 Br. Supp. Mot. at 3–4; Aff. of B. Scott Crawford ¶ 2, Oct. 18, 2022 [ECF No. 17-2].) VA 811 uploads to PolicyTech the document that it wants its employees to review; PolicyTech, in turn, sends an e-mail to the applicable VA 811 employees, including a link to the document that is ready to be reviewed. (*Id.* ¶ 3.) The employee then clicks on the link which directs her to PolicyTech's platform where the employee enters her password and is provided with the document. (*Id.* ¶ 4.) Once the employee reviews the document, she acknowledges that she has read and understood it, and PolicyTech registers the confirmation. (*Id.*) VA 811 contends that it forwarded Soucie a copy of the Agreement through PolicyTech and that, on August 17, 2020, Soucie opened the Agreement and acknowledged reviewing it by clicking on a "Mark as Read" button. (*See* Crawford Aff. ¶¶ 6–8.)

VA 811 also submitted documentary exhibits establishing that, prior to forwarding the Agreement to its employees, its HR department sent Soucie a notification about the Agreement's implementation and advised her to expect the Agreement via PolicyTech. (*Id.* ¶ 6; Aug. 13, 2020 E-Mail Announcement [ECF No. 17-3].) It also submitted a screenshot of PolicyTech's August 15, 2020 e-mail to Soucie, informing her that she was required to read or complete the Agreement before August 31, 2020 (Read or Complete Deadline Notice [ECF No. 17-4]), and a screenshot from PolicyTech's database indicating that Soucie completed the Agreement on August 17, 2020 at 9:25 a.m. by clicking it "Mark as Read" (Date Completed Roster [ECF No. 17-5]).[1] VA 811 argues that, even if the court is not persuaded that clicking "Mark as Read" is sufficient to constitute "signing" the Agreement, the Agreement is nevertheless enforceable because the FAA does not require that arbitration agreements be signed, instead requiring only that they be received and acknowledged. Accordingly, Soucie is bound because she clicked "Mark as Read." (VA 811 Br. Supp. Mot. at 9.)

Alternatively, VA 811 argues that assenting to the Agreement was an express condition of Soucie's continued employment; the Agreement provides that its recipient has "been asked to sign and acknowledge this [A]greement by utilizing the 'Mark as Read' feature within PolicyTech, . . . [but that Soucie's] continued employment constitutes acceptance of the terms and agreement to be bound even if [she does] not sign it." (Agreement ¶ 14.) In the same provision, VA 811 expressly conditions Soucie's continued employment on her assenting to

---

[1] VA 811 also submitted excerpts from Soucie's deposition where she acknowledged that, based on PolicyTech's records, it "appears" that she clicked "Mark as Read." Moreover, Soucie's deposition testimony revealed that she worked from home virtually the entire time she was employed by VA 811 and that she never gave anyone else her unique PolicyTech password. (Dep. of Natalie Lynn Soucie 14:2–18:18, Dec. 15, 2022 [ECF No. 17-7].)

the Agreement: "I acknowledge and agree that acceptance of the terms of this Agreement is a condition of my employment or continued employment with [VA 811]." (*Id.*) It is undisputed that Soucie continued her employment with VA 811 until on or about August 20, 2021 (Compl. ¶ 9), about a year after she received the Agreement.

## C. SOUCIE'S CONTENTIONS

In opposition, Soucie asserts that she "does not recall" clicking on the "Mark as Read" button, does not remember having ever seen or acknowledged the Agreement, and does not recall anyone explaining it to her. (Aff. of Natalie Lynn Soucie, Nov. 1, 2022 [ECF No. 18-7].) Although she flatly denies that she was ever presented the Agreement *through Docusign*, which she says is the platform that VA 811 typically uses to execute contracts with vendors (*id.*), she makes no such declaration regarding PolicyTech. She adds that she does not have a copy of the Agreement, aside from the copy VA 811 produced with its motion, and that she has no recollection of anyone telling her that she had to assent to the Agreement as a condition of her continued employment. (*Id.*)

Alternatively, Soucie contends that even if she did click "Mark as Read" in PolicyTech, this does not constitute her signing or entering into the Agreement but, rather, just acknowledging that she had read it. In support of this position, Soucie points to e-mails between herself and Kari Harris ("Harris"), VA 811's Head of Safety and Organizational Improvement. (*See* Soucie-Harris E-Mails [ECF No. 18-2].) In those July 2020 e-mails—during Soucie's new employee onboarding process and about a month *before* she purportedly clicked "Mark as Read" as to the Agreement—Soucie asked Harris about PolicyTech and the effect of her clicking "Mark as Read":

**From:** Natalie F. Soucie <nsoucie@va811.com>
**Sent:** Friday, July 17, 2020 11:51 AM
**To:** Kari Harris <kharris@va811.com>
**Subject:** Policy Tech

Hey Kari!
  Just checking on what I need to do in Policy Tech.  Do I just mark them as "Read" ?? When I do that – I get this message, which I can't completely see.
By hitting this blue button am I approving it?
Natalie



And Harris responded:

**From:** Kari Harris <kharris@va811.com>
**Sent:** Friday, July 17, 2020 12:08 PM
**To:** Natalie F. Soucie <nsoucie@va811.com>
**Subject:** RE: Policy Tech

Hey Natalie!
That is weird that you're not able to see the whole box.  The blue button says "Mark as Read".  You're not really "approving" it per se but basically just signing off that you've read whatever the particular procedure is and that you understand it. 😊

Kari

(*Id.*) In essence, Soucie argues that she relied on Harris's July 17, 2020 e-mail, and that this communication shows that she never agreed to the terms of the Agreement by clicking "Mark as Read" or by her continued employment.

- 5 -

Soucie also submitted an e-mail from Harris to Crawford and Shana Linthicum at VA 811 wherein Harris explained that, after consulting with PolicyTech's Product Specialist and reviewing the various documents sent by PolicyTech's IT, Product, and Legal teams, "[t]here is nothing that specifically states a signoff in their [PolicyTech] system is 'legally binding.'" (VA 811 Internal E-Mail, May 19, 2022 [ECF No. 18-3].) Soucie argues that this communication shows that VA 811 knew that she would not be contracting by clicking "Mark as Read" because "the PolicyTech platform was not designed to facilitate the entering into contracts." (Soucie Opp. Br. at 9.)

Lastly, Soucie argues that, even if she did enter into the Agreement, her continued employment does not constitute adequate consideration to support it, and so the contract fails as a matter of law.

## II.

### A.  SUMMARY JUDGMENT STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, the court must "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if 'a reasonable jury could return a verdict for the nonmoving party.'" *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 330 (4th Cir. 2012)). "A fact is material if it 'might affect the outcome of the suit under the governing law.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986)). But if the evidence of a genuine issue of material fact "is merely colorable or is not significantly probative, summary judgment may be granted." *Id.* at 249–50 (cleaned up).

In considering a motion for summary judgment under Rule 56, a court must view the record as a whole and draw all reasonable inferences in the light most favorable to the nonmoving party. *See id.* at 255; *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994). The non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment. *Baber v. Hosp. Corp. of Am.*, 977 F.2d 872, 874–75 (4th Cir. 1992). To withstand a summary judgment motion, the nonmoving party must produce sufficient evidence from which a reasonable jury could return a verdict in his favor. *Anderson*, 477 U.S. at 248. "Conclusory or speculative allegations do not suffice, nor does a mere scintilla of evidence in support of the nonmoving party's case." *Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 649 (4th Cir. 2002) (cleaned up). The evidence relied on must proffer "sufficient proof, in the form of admissible evidence, that could carry the burden of proof" at trial. *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1316 (4th Cir. 1993). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *First Nat. Bank of Ariz. v. Cities Service Co.*, 391 U.S. 253, 289 (1968)).

A factual dispute is material if the resolution thereof "might affect the outcome of the [motion] under the governing law." *Anderson*, 477 U.S. at 248. Accordingly, "the party requesting a jury trial under Section 4 [of the Federal Arbitration Act] must provide sufficient evidence in support of [her] claims such that a reasonable jury could return a favorable verdict under applicable law." *Chorley Enters., Inc. v. Dickey's Barbecue Rests., Inc.*, 807 F.3d 553, 564 (4th Cir. 2015). If a trial is necessary, the party alleged to be in default of the agreement to arbitrate shall be granted a jury trial if she timely demands it. 9 U.S.C. § 4.

## B. THE FEDERAL ARBITRATION ACT

The Federal Arbitration Act ("FAA") provides that "a written provision in a contract to settle by arbitration a controversy thereafter arising out of such contract shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Arbitration agreements are matters of contract, *Rent–A–Center, West, Inc. v. Jackson,* 561 U.S. 63, 67 (2010); *Mey v. DIRECTV, LLC*, 971 F.3d 284, 286 (4th Cir. 2020), and "courts must place arbitration agreements on an equal footing with other contracts and enforce them according to their terms," *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (cleaned up). A district court "has no choice but to grant a motion to compel arbitration where a valid arbitration agreement exists and the issues in a case fall within its purview." *Adkins v. Lab. Ready, Inc.*, 303 F.3d 496, 500 (4th Cir. 2002) (citing *United States v. Bankers Ins. Co.,* 245 F.3d 315, 319 (4th Cir. 2001)). The district court—not an arbitrator—decides "whether the parties have formed an agreement to arbitrate." *Berkely Co. Sch. Dist. v. Hub Int'l Ltd.*, 944 F.3d 225, 234 (4th Cir. 2019).

Section 2 of the FAA reflects a "liberal federal policy favoring arbitration." *AT&T Mobility LLC*, 563 U.S. at 339 (quoting *Moses H. Cone Memorial Hospital v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)). Similarly, Virginia public policy favors arbitration. *See TM Delmarva Power, LLC v. NCP of Virginia, LLC*, 263 Va. 116, 123 (2002); Va. Code Ann. § 8.01–581.01.

"In determining whether an order compelling parties to arbitrate is proper, many courts have employed a three-part test, examining: '(1) whether the parties have made an agreement to arbitrate; (2) the scope of the agreement; [and] (3) whether the federal statutory claims are arbitrable.'" *Woolridge v. Securitas Sec. Servs. USA, Inc.*, No. 3:06 CV 573, 2006 WL 3424469, at

*1 (E.D. Va. Nov. 21, 2006) (quoting *Reese v. Comm. Credit Corp.*, 955 F. Supp. 567, 569 (D.S.C. 1997)), *aff'd*, 222 F. App'x 257 (4th Cir. 2007). "Whether a party has agreed to arbitrate an issue is a matter of contract interpretation: '[A] party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.'" *Levin v. Alms and Assoc., Inc.*, 634 F.3d 260, 266 (4th Cir. 2011) (quoting *Am. Recovery Corp. v. Computerized Thermal Imaging*, 96 F.3d 88, 92 (4th Cir. 1996) (citation omitted) (alteration in *Levin*); *see also Minnieland Private Day Sch., Inc. v. Applied Underwriters Captive Risk Assurance Co.*, 913 F.3d 409, 415 (4th Cir. 2019). "Before determining that the [FAA] applies, the court must decide that the [parties] . . . agreed to arbitrate." *Camara v. Mastro's Rests. LLC*, 952 F.3d 372, 373 (D.C. Cir. 2020) (citing *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985)).

Section 4 of the FAA provides that, when presented with a motion to compel arbitration, "[t]he court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4. Conversely, "[i]f the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof." *Id.* In other words, if the district court finds unresolved questions of material fact on the issue of contract formation, it must move promptly to a trial on that issue. *Id.*; *see also Howard v. Ferrellgas Partners, L.P.*, 748 F.3d 975, 978–79 (10th Cir. 2014) ("Having found unresolved questions of material fact precluding it from deciding definitively whether the parties agreed to arbitrate, the district court was in no position to *deny* a motion to arbitrate.

It *had* to move promptly to trial of the unresolved factual questions surrounding the parties' claimed agreement to arbitrate.").

In determining whether a trial is necessary, the court applies the familiar summary judgment standard. *See Chorley Enters., Inc.,* 807 F.3d at 564; *see also* Fed. R. Civ. P. 56(a). The court, therefore, is obliged to consider appropriate materials outside the pleadings. *See Galloway v. Santander Consumer USA, Inc.,* 819 F.3d 79, 86 (4th Cir. 2016).

## C.  VIRGINIA CONTRACT LAW

Agreements to arbitrate must "be applied according to state contract law, and the agreement to arbitrate a conflict must be interpreted like any other element of a contract." *Giordano ex rel. Estate of Brennan v. Atria Assisted Living, Virginia Beach, LLC*, 429 F. Supp. 2d 732, 735 (E.D. Va. 2006). "Whether a party agreed to arbitrate a particular dispute is a question of state law governing contract formation." *Johnson v. Carmax, Inc.*, No. 3:10-CV0-213, 2010 WL 2802478, at *2 (E.D. Va. July 14, 2010).

> To decide which state's law to apply, the Court must first decide which conflicts rules to apply. Although Plaintiffs' suit arises under federal law, the federal statute in this case incorporates a matter which is the subject of state law. In a similar situation, the Fourth Circuit held that a federal court facing a federal question that incorporates a state law issue should apply the conflicts rules of the state in which it sits absent a compelling federal interest dictating otherwise.

*Id.* (citing *In re Merritt Dredging Co.*, 839 F.2d 203, 206 (4th Cir. 1988). Because there is no compelling federal interest otherwise, Virginia's choice of law rules apply.

In Virginia, "[t]he nature, validity and interpretation of contracts are governed by the law of the place where [the contract was] made . . . ." *Black v. Powers*, 48 Va. App. 113, 128 (2006) (collecting cases). "Thus, when determining the validity of a contract, Virginia courts

will generally apply the law of the place where the contract was executed (the *lex loci contractus*)." *Id.* VA 811 is a Virginia corporation with its principal place of business in Roanoke, and Soucie was employed by VA 811 (Agreement ¶ 11); moreover, the Agreement states that any arbitration will occur in Roanoke, Virginia, and does not specify any other applicable state law (Agreement ¶ 6). As such, the Agreement will be interpreted according to Virginia law.[2]

Under Virginia law, mutual assent is a necessary predicate to the formation of a binding contract. *Cully v. Smith*, 102 Va. Cir. 293, 2019 WL 8883731, at *2 (2019) (citations omitted). "Mutual assent is a distinct intention common to the parties to a contract to create enforceable, reciprocal obligations governing their relationship as determined from the interaction between, and manifested intention of, the parties." *Id.* (collecting cases). "Until the parties have a distinct intention common to both and without doubt or difference, there is a lack of mutual assent and, therefore, no contract." *Persinger & Co. v. Larrowe*, 252 Va. 404, 408 (1996).

"Typically, for an express contract, mutuality of assent is demonstrated by proof of an offer and an acceptance." *Cully*, 2019 WL 8883731, at *2. The court must "ascertain whether a party assented to the terms of a contract from that party's words or acts . . . ." *Phillips v. Mazyck*, 273 Va. 630, 636 (2007). Mutual assent is determined "exclusively from those expressions of [the parties'] intentions which are communicated between them." *Moorman v. Blackstock, Inc.*, 276 Va. 64, 75 (2008) (citations omitted).

### III.

The court disagrees with Soucie that there is a material question of fact as to whether she clicked "Mark as Read" in PolicyTech; the overwhelming, unrefuted evidence proves that

---

[2] Neither party disputes the application of Virginia law to this question.

she did. It also disagrees with Soucie that, by clicking "Mark as Read," she did not manifest her assent to the Agreement because the Agreement's plain language binds her (1) even if she does not sign it and (2) by her continued employment.

## A. WHETHER THE PARTIES MADE AN AGREEMENT TO ARBITRATE

### 1. No Reasonable Jury Could Find That Soucie Did Not Click "Mark As Read" In PolicyTech

There is no dispute that Soucie did not physically sign the Agreement. Instead, VA 811 argues that Soucie assented to the Agreement and its terms by clicking "Mark as Read" in PolicyTech and by continuing her employment at VA 811. Although Soucie does not recall clicking "Mark as Read," she does not offer any competent evidence to refute the digital forensic evidence that she did.

It is well settled that the court must hold a trial when a party "unequivocally denies" 'that an arbitration agreement exists, and 'show[s] sufficient facts in support' thereof." *Berkeley Cnty. Sch. Dist. v. Hub Int'l Ltd.*, 944 F.3d 225, 234 (4th Cir. 2019) (quoting *Chorley Enters., Inc.*, 807 F.3d at 564). Anything less than an *unequivocal* denial would typically be insufficient for Soucie to avoid arbitration. *Compare Hughes v. Charter Commc'ns, Inc.*, No. 3:19-CV-01703-SAL, 2020 WL 1025687, at *5 n.9 (D.S.C. Mar. 2, 2020) (compelling case to arbitration and holding that the plaintiff's affidavit testimony that she "do[es] not remember receiving or reviewing [an] email [containing a link to and instructions regarding an arbitration agreement] during [her] employment," did not constitute an *unequivocal* denial that an arbitration agreement existed), *with Mystic Retreat Med Spa & Weight Loss Ctr., PLLC v. Ascentium Cap., LLC*, No. 1:21CV00515, 2023 WL 362814, at *7–8 (M.D.N.C. Jan. 23, 2023) (sending a question of contract formation under motion to compel to a jury for resolution where the party seeking

to avoid arbitration submitted affidavits containing "unequivocal denials" saying that they "never read or were aware of" an e-mail attachment alleged to have contained the arbitration agreement, where the actual contract was signed in person and not electronically, and where the executed contract was ambiguous about where the contract's referenced attachments (one of which was the arbitration agreement) were located). "[A] party cannot avoid compelled arbitration by generally denying the facts upon which the right to arbitration rests; instead, the party must identify specific evidence demonstrating a material factual dispute." *S. Elec. Servs. Inc. v. Cornerstone Detentions Prods., Inc.*, 2010 WL 2233664, at *3 (W.D. Va. June 3, 2010) (citing *Tinder v. Pinkerton Sec.*, 305 F.3d 728, 735 (7th Cir. 2002)).

Soucie denies remembering any of the pertinent events surrounding the Agreement's formulation, discussion, or implementation. Her sworn declaration that she "does not recall" seeing or acknowledging the Agreement matches her deposition testimony that she "does not recall" ever seeing or clicking "Mark as Read" in PolicyTech. Soucie also testified that she does not recall the Agreement being discussed at any Executive Staff Meeting that she attended (Soucie Dep. 26–7), although VA 811 has established that *arbitration* was, in fact, an agenda item for one such meeting; and she claims no recollection of receiving the August 13, 2020 e-mail notifying her and all VA 811 employees that the Agreement was going to be implemented through PolicyTech. (*See* Soucie Dep. at 30.)

But as noted, "I don't recall" is generally not sufficient to force a trial on the issue of contract formation where, as here, VA 811 has provided abundant digital evidence establishing that its former executive received the Agreement and, when prompted to do so, clicked "Mark as Read." *See Rakowski v. Best Buy Stores, L.P.*, No. CV ELH-20-1107, 2020 WL 6485085, at *1

(D. Md. Nov. 3, 2020). Despite the court granting Soucie's request to engage in discovery on the question of contract formation before having to answer VA 811's motion, Soucie has failed to produce any evidence to refute VA 811's evidence on this point. She has made no allegations—let alone an express showing—that VA 811's proof is inauthentic, incorrect, or fraudulent. She did not even deny clicking "Mark as Read" when confronted at her deposition with VA 811's PolicyTech Date Completed Roster, showing that she signed off on it at a specific time on the morning of August 17, 2020, just a few days after receiving an e-mail notification that the arbitration agreement was being sent to employees through PolicyTech. (*See* August 13, 2020 E-Mail Announcement.) Instead, Soucie only reiterated that she "did not recall" doing so.[3]

On this record, Soucie's "I don't recall[s]" are insufficient as a matter of law to create a material issue of fact. *Accord Tinder*, 305 F.3d at 735–36; *Dickey v. Baptist Mem'l Hosp.-N. Miss.*, 146 F.3d 262, 266 n.1 (5th Cir. 1998); *Greensboro Lumber Co. v. Georgia Power Co.*, 643 F. Supp. 1345, 1368 n.28 (N.D. Ga. 1986). Indeed, another court in this Circuit drew a distinction between defendants who swore in declarations that they "do not recall" digitally acknowledging or signing an arbitration agreement and those who went "beyond simple forgetfulness" by either (1) flatly denying signing the agreement and that someone else must have signed it, or (2) claiming that their supervisors often filled out electronic forms for them. *Gordon v. TBC Retail Grp., Inc.*, No. 2:14-cv-03365, 2016 U.S. Dist. LEXIS 106205, at *21–24 (D.S.C. Aug. 11, 2016). The former "I-do-not-recall" group *failed* to raise a genuine question

---

[3] VA 811 also put forth unrefuted evidence that Soucie worked from home virtually the entire time she was employed and that no one else had access to her PolicyTech account.

of material fact in that regard, whereas the other categories of defendants, who went beyond "I do not recall," raised a genuine question of material fact:

> A witness who states that he cannot remember whether or not an event alleged to have happened by the moving party actually took place does not help the nonmoving party to meet its burden. The nonmoving party must come up with evidence that negates the version of events alleged by the moving party—an acknowledgement that the event may have occurred, but the witness cannot remember, falls short.

*Id.* at *22–23 (citing *Cox v. United States*, 2015 U.S. Dist. LEXIS 28913, 2015 WL 1040577, at *3 (M.D.N.C. Mar. 10, 2015)).

The cases Soucie cites to in support of her position are factually inapposite. In *Kirkwood v. Financial West Investment Group, Inc.*, the party seeking to avoid arbitration submitted an affidavit that "his signature on the form was forged, and that, as a result, he never agreed to arbitrate . . . ." Civil Action No. CCB-17-2005, 2019 U.S. Dist. LEXIS 16032, at *5 (D. Md. Jan. 30, 2019). Similarly, in *Dabney v. Car Connection, Inc.*, the party seeking to avoid arbitration asserted "that her initials and signatures on the Contract were forged." Civil Action No. 3:16-cv-297, 2016 U.S. Dist. LEXIS 118127, at 2 (E.D. Va. Aug. 11, 2016). There is no such allegation of forgery here; Soucie simply "doesn't recall" the relevant event, despite overwhelming evidence that it occurred.

In *Davis v. Lendmark Financial Services, LLC*, the party seeking to avoid arbitration testified that she had no recollection of clicking the electronic link and accepting the offer of employment—an offer that required assent to an arbitration clause. No. 7:15-cv-000131, 2016 U.S. Dist. LEXIS 31988, at *3–9 (W.D. Va. Mar. 11, 2016). But Davis went "beyond simple forgetfulness," claiming that: she was working at another job at the time her employer claimed

that she had digitally signed off on the agreement; that she received the e-mail on her cell phone but its small screen did not allow her to read documents on it easily; and, most importantly, (1) that she "never saw anything about arbitration" and (2) "[she] could not have [electronically signed off at that date and time]. *Id.* at *4, 6. Moreover, the plaintiff in that case testified that she "would have to have provided [her] e-mail login information to [the employer's representative] to do so for [her]." *Id.* at *3–6. The question of Davis's assent to the arbitration agreement, therefore, turned on a credibility determination. And in *Brent v. Priority 1 Automotive Group*, the party challenging arbitration signed an employment contract that incorporated the employee handbook, but later testified that she "was never provided with" the employee handbook containing the arbitration provision—digitally or otherwise— and challenged the reliability of the movant's computer system and the creation and preservation of the e-signature log. 98 F. Supp. 3d 833, 836 (D. Md. 2015).

Soucie, however, simply stands on her "I do not recall" answers, offering no unequivocal denial and no alternative explanation for VA 811's overwhelming proof that she clicked "Mark as Read." Even with the evidence viewed in the light most favorable to Soucie, her contention is insufficient to create a genuine issue of material fact on this record. *See Gordon,* 2016 U.S. Dist. LEXIS 106205, at *22–23. Because there is no genuine question of material fact that Soucie clicked "Mark as Read," she is not entitled to a jury trial on this question. *See Rakowski*, 2020 WL 6485085, at *1.

### 2. Soucie Assented To The Agreement

Alternatively, Soucie argues that, even if it is undisputed that she clicked "Mark as Read," she relied on Harris's July 17, 2020 e-mail—which she received a month *before* the

Agreement was sent out for review—to create a genuine issue of material fact on this issue. Specifically, Soucie argues that she was not contracting or assenting to the Agreement; instead, she only signed off that she *read and understood* it.[4] (*See* Soucie Opp. Br. at 3, 9.) Soucie also relies on Harris's internal e-mail to VA 811 employees confirming that there is nothing in PolicyTech that indicates a signoff in its system is binding, contending that *even VA 811* did not intend to bind her through PolicyTech. The court is not persuaded by either argument.

Under Virginia law, mutual assent is a necessary predicate to the formation of a binding contract. *Cully*, 2019 WL 8883731 at * 2. "Assent to an arbitration agreement in the absence of a signed document may be manifested by an employee beginning or continuing to work for the employer, knowing that they have implemented a binding arbitration policy." *Csukardi v. Platinum Corral, LLC*, No. 6:16-CV-00064, 2017 WL 639376, at *4 (W.D. Va. Feb. 16, 2017) (citing *Phillips*, 273 Va. at 636); *see also Rakowski*, 2020 WL 6485085, at *9–12.

VA 811 cites two cases for the proposition that continued employment constitutes both adequate consideration and, as most important here, assent to the arbitration agreement. *See de Jesus-Israel v. U-Haul Co. of Virginia*, 571 F. Supp. 3d 490, 494–95 (E.D. Va. 2021); *Hamilton v. Masco Corp.*, No. 2:09CV470, 2010 WL 11566128, at *1 (E.D. Va. Mar. 2, 2010). But neither

---

[4] It is strange that Soucie argues what she believed she was signing, and the basis for that belief, while simultaneously claiming that she does not recall reviewing the Agreement or clicking "Mark as Read." The court is, frankly, at a loss to understand how she can argue *what she was thinking* when she was performing an act *she does not recall*. Insofar as this is a factual dispute, no reasonable jury would believe that Soucie recalls what she was thinking when she clicked "Mark as Read" while not recalling anything about the Agreement, reviewing the Agreement, or clicking "Mark as Read." And even if it did, that fact is not material. If Soucie does not recall the events *or* what she was thinking at the time, the court's analysis herein applies. If she *does* recall the events *and* what she was thinking at the time, the unequivocal language of the Agreement would bind her *regardless* of her beliefs about what clicking "Mark as Read" means.

of these cases involved a written communication from a company department head,[5] like the Harris e-mail here, telling the plaintiff that acknowledging and signing the agreement was "not really 'approving' it."

But Harris's e-mail did not end at "not really approving it," and Soucie cannot have the court strictly apply one part of the e-mail while ignoring the rest. Harris's e-mail went on to tell Soucie that by clicking "Mark as Read" she was "signing off that you've read whatever the particular procedure is and that you understand it." And the Agreement's plain language—which Soucie acknowledged that she "read and understood"—compels the parties to arbitrate their dispute:

> I acknowledge and agree that acceptance of the terms of this Agreement is a condition of my employment or continued employment with the Company. This Agreement is not and shall not be construed to create any contract of employment for a specified duration and does not alter the "at-will" status of employment with the Company.  Either I or the Company may terminate the employment relationship at any time, with or without advance notice, and with or without cause.  However, this Agreement will remain in full force and effect after my employment with the Company ends.
>
> **I agree that I had sufficient time to read and understand this Agreement and had (and have) the opportunity to ask questions. I understand I am waiving my right to a jury trial for covered claims. I also understand that I am waiving any right I may have to bring any claim covered by this Agreement as a Class Action (as defined herein), either in court or in arbitration, or to participate in such an action. While I have been asked to sign and acknowledge this agreement by utilizing the "Mark as Read" feature within Policy Tech, my continued employment constitutes acceptance of the terms and agreement to be bound even if I do not sign it.**

(Agreement at 4.)

The FAA does not expressly require an agreement to arbitrate be signed to be enforceable; it only requires that the agreement be "in writing." 9 U.S.C. § 2.[6] And Soucie

---

[5] The parties do not dispute that Harris's title was "Head of Safety & Organizational Improvement." Soucie goes a step further in describing her as an "executive."

[6] The e-mails from VA 811 indicating that "[t]here is nothing that specifically states a signoff in their [PolicyTech] system is 'legally binding'" (VA 811 Internal E-Mail, May 19, 2022) is a red herring. Assuming that it is true for purposes of this motion, this does not change the outcome. The application of the FAA and

clicked "Mark as Read," which *was* the express way to "sign and acknowledge" the Agreement, according to its own terms. (Agreement at 4.) "In the absence of fraud, duress, or mutual mistake, as here, an individual having the capacity to understand a written document who signs it after reading it, or who signs it without reading it, is bound by the signature." *First Nat. Exch. Bank of Va. v. Johnson*, 233 Va. 254, 259 (1987) (citing *Metro Realty v. Woolard,* 223 Va. 92, 99 (1982)); *see also Fairfax Co. of Va., LLC v. Samson Realty, LLC,* 74 Va. Cir. 141 (2007). Moreover, Soucie continued her employment with VA 811 until she alleges VA 811 terminated it over a year later on August 20, 2021 (Compl. ¶ 9), a precondition of which was her "accepting the terms and agreeing to be bound even if she did not sign it." (Agreement at 4 (cleaned up).) On the undisputed facts before the court, Soucie simply cannot escape the Agreement's plain terms.

Soucie's purported reliance on the Harris e-mail is belied by its content. The Agreement itself instructed her to "please contact Human Resources if you have any questions." (Agreement at 4.) Harris was Head of Safety & Organizational Improvement, not HR. Soucie, who was also a member of the executive team, knew that Harris had no HR role with VA 811. (Soucie Dep. 11:6–12.) But despite acknowledging that she had the opportunity to contact HR with questions about the Agreement, Soucie never did. (Soucie Dep. 31:21–32:2; 34:12–18.)[7]

---

Virginia contract law under these facts and circumstances lead to the ineluctable conclusion that Soucie assented to the Agreement.

[7] Notably, Soucie only replied to Harris's e-mail two-and-a-half *years* later, on December 14, 2022, long after her employment had ended and after the court had ordered the parties to undertake discovery on this issue:

Rather, she clicked "Mark as Read," indicating that she read and understood the Agreement, which necessarily included the binding language that she now seeks to avoid.

In sum, on this record, no reasonable jury could believe that Soucie did not intend to be bound, or that she did not think that she was assenting to the Agreement, when clicking "Mark as Read" and by her continued employment. Viewing the evidence in the light most favorable to Soucie, she is not entitled to a jury trial on the question of whether she assented to the Agreement. The court finds that she assented to the Agreement as a matter of law.[8]

### 3. Consideration

The parties disagree as to whether the Agreement was supported by adequate consideration. Soucie argues that the Agreement is unenforceable as a matter of contract law

---

**From:** Natalie F. Soucie <nsoucie@va811.com>
**Date:** Wednesday, December 14, 2022 at 12:48 PM
**To:** Kari Harris <kharris@va811.com>
**Subject:** RE: Policy Tech

Excellent thank you!!!

---

(Soucie-Harris E-Mails.) Soucie alleges that VA 811 terminated her employment on August 20, 2021, but she apparently still had access to her VA 811 e-mail account to send this e-mail. The court recognizes the timing of Soucie's reply missive, along with its nature: it was delivered just about three months after Soucie had filed her lawsuit in this court on September 21, 2022 (*see* Compl.), just a month after VA 811 had filed its first motion to dismiss it and compel arbitration of the dispute on November 21, 2022 (*see* ECF No. 5), and during the time when the parties were gathering evidence to support their respective positions on this motion in accordance with the court's Order to take targeted discovery for approximately 75 days (*see* ECF No. 10). Moreover, the Soucie-Harris July 17, 2020 e-mail exchange occurred a full month before Soucie completed the Agreement on August 17, 2020 by clicking it "Mark as Read." (*See* Date Completed Roster.) Nowhere in the e-mail does Soucie refer to the Agreement; it therefore does not appear that Soucie's inquiry to Harris was tailored to the Agreement. While not dispositive, this circumstantial evidence also makes it less likely that Soucie relied on the Harris e-mail as it pertains to the Agreement.

[8] The court would have to jump through analytical hoops and draw inferences that are not supported by the undisputed factual record to rule in Soucie's favor, an invitation it declines. *See, e.g., O'Neil v. Hilton Head Hosp.*, 115 F.3d 272, 276 (4th Cir. 1997) (reversing the district court, emphasizing the federal policy favoring arbitration recognized by the Supreme Court, and admonishing the district court for "pursuing every possible avenue to avoid the binding arbitration agreement between O'Neil and her employer.").

for want of consideration because she gained nothing from it, and that continued employment cannot, under Virginia law, constitute consideration. (*See* Soucie Opp. Br. at 9–10.) VA 811 argues that the Agreement need not have been supported by consideration other than the parties' mutually agreeing to be bound since it is an agreement to arbitrate and that, even if consideration was required, Soucie's continued employment constituted adequate consideration to support the Agreement. (*See* VA 811 Br. Supp. Mot. at 13–14.)

"[A] mutual promise to arbitrate itself constitutes sufficient consideration for an arbitration agreement." *Tarpley v. Livings*, No. 4:16-CV-0021, 2016 WL 4537751, at *4 (W.D. Va. Aug. 30, 2016) (quoting *McNeil v. Haley S., Inc.*, No. 3:10CV192, 2010 WL 3670547, at *6 (E.D. Va. Sept. 13, 2010)); *see also Johnson v. Circuit City Stores*, 148 F.3d 373, 378 (4th Cir. 1998) (reversing district court ruling that an agreement to arbitrate failed for want of consideration where the parties agreed to be mutually bound by its terms); *O'Neil*, 115 F.3d at 275. Here, the parties made reciprocal promises to arbitrate covered disputes. (*See* Agreement at 1 ("[VA 811] and [Soucie] agree to use informal conciliation and confidential binding arbitration, instead of going to court, to resolve any claims . . . that (a) [Soucie] may have against [VA 811], or (b) [VA 811] may have against [Soucie].").) Because the parties mutually assented to the Agreement, that constitutes adequate consideration, so the court need not decide whether Soucie's continued employment also constitutes consideration.

## B. SCOPE OF THE AGREEMENT

"The heavy presumption of arbitrability requires that when the scope of the arbitration clause is open to question, a court must decide the question in favor of arbitration." *Levin*, 634 F.3d at 266. The Agreement provides that the parties "agree to use informal conciliation and

confidential binding arbitration, instead of going to court, to resolve any claims or disputes . . . that . . . [Soucie] may have against [VA 811]," and that the "[t]his Agreement is governed by the Federal Arbitration Act, 9 U.S.C. § 1 et seq. . . ." (Agreement at 1.) It further provides that "if resolution is not reached through conciliation, the parties agree that arbitration is the required and exclusive forum to resolve all covered disputes and claims." (Agreement ¶ 4.) It defines expansively the scope of disputes subject to arbitration:

> **Covered Disputes and Claims.** Subject to the terms herein, [VA 811] and [Soucie] agree that *any past, current or future legal dispute or claim arising out of or relating to my employment (including those related to my application for employment, my employment, or the termination of my employment) must* be resolved using information conciliation and final and binding arbitration, and not by a court or jury trial. Such legal claims may *include, but are not limited to*, disputes regarding wage and hour matters, compensation, leave, harassment, *discrimination*, accommodation, *retaliation*, expense reimbursement, training, discipline, defamation, transfer, demotion, promotion, and termination. *It also includes, but is not limited to*, claims for any monetary relief under any applicable laws including, but not limited to, any of the Civil Rights Acts (e.g., Title VII), Age Discrimination in Employment Act, Equal Pay Act, *Americans with Disabilities Act, Family and Medical Leave Act*, Fair Labor Standards Act, Employee Retirement Income Security Act, Genetic Information Non-Discrimination Act, the Virginia Values Act, the Virginia Human Rights Act, *and any other federal, state or local law or regulation covering the same or similar claims or any aspect of the employment relationship*, as well as any tort, negligence, common law or contractual claims. It also includes claims the [VA 811] may have against [Soucie], such as for conversion, defamation, breach of fiduciary duty and other tort claims.

(Agreement ¶ 1 (emphasis added).) The Agreement recognizes that "[i]ssues relating to this Agreement's validity, enforceability . . . shall be decided by a court of competent jurisdiction." (*Id.*) It provides a remedy to enforce the Agreement by expressly authorizing either party to "move to dismiss, stay or compel arbitration if the other party initiates or participates in a

lawsuit in Court regarding a dispute or claim that is subject to resolution by arbitration pursuant to terms of this Agreement." (*Id.* ¶ 12.)

Based on the foregoing, the court finds that each of Soucie's three claims unquestionably falls within the Agreement's scope.

## C.  SOUCIE'S FEDERAL STATUTORY CLAIMS ARE ARBITRABLE

Soucie's complaint asserts three counts based on alleged discrimination and retaliation that she allegedly suffered while employed at VA 811: discriminating against her based on her medical condition and retaliation for seeking medical leave, in violation of the Family Medical Leave Act ("FMLA") (Count I); interfering with her attempt to exercise her FMLA rights by taking medical leave (Count II); and retaliating against her for advocating for accommodations for a disabled co-worker, by terminating her, in violation of the Americans with Disabilities Act ("ADA") (Count III). (Compl. ¶¶ 22–49.) FMLA and ADA claims are subject to the FAA. *See Brown v. Trans World Airlines*, 127 F.3d 337, 340 (4th Cir. 1997) (FMLA); *Austin v. Owens-Brockway Glass Container, Inc.*, 78 F.3d 875, 885–86 (4th Cir. 1996) (ADA); *see also Murray v. United Food and Commercial Workers Intern. Union*, 289 F.3d 297, 301 (4th Cir. 2002) (holding that the FAA applies to claims under Title VII of the Civil Rights Act because the FAA's policy favoring dispute resolution through arbitration applies "to employment agreements to arbitrate discrimination claims brought pursuant to federal statutes."). Thus, all three of Soucie's claims are arbitrable.

## IV.

The FAA instructs the court to stay the trial of an action before it while awaiting a claim subject to arbitration to be resolved by arbitration. 9 U.S.C. § 3. "Notwithstanding the

terms of § 3, however, dismissal is a proper remedy when *all* of the issues presented in a lawsuit are arbitrable . . . ." *Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc.*, 252 F.3d 707, 709–10 (4th Cir. 2001) (emphasis added). *But see Aggarao v. MOL Ship Management Co., Ltd.*, 675 F.3d 355, 376, n.8 (4th Cir. 2012) (acknowledging the intra-Circuit tension, as well as the Circuit split, regarding whether dismissal or a stay is appropriate when granting a motion to compel arbitration on *all* counts in an action).[9] Such is the case here. All of Soucie's claims fall within the Agreement's scope and are arbitrable, so the court will dismiss the complaint without prejudice. *See Rakowski*, 2020 WL 6485085 at *12; *Woolridge*, 2006 WL 3424469, at *2, *aff'd*, 222 F. App'x 257.

## V.

For these reasons, VA 811's motion will be granted, and the court will refer this case to arbitration and dismiss the complaint without prejudice.

The clerk is directed to forward a copy of this Memorandum Opinion and the accompanying Order to all counsel of record.

**ENTERED** this 18th day of April, 2023.

*/s/ Thomas T. Cullen*

HON. THOMAS T. CULLEN
UNITED STATES DISTRICT JUDGE

---

[9] The weight of authority appears to support the court's reading of 9 U.S.C. § 3 that the "shall stay" command applies only to situations where fewer than all counts in an action are subject to arbitration, meaning that the court retains jurisdiction over others, and that dismissal is warranted when *all* counts are subject to arbitration. Under § 3, a stay is required when "any issue referable to arbitration" is referred to arbitration upon the court's being satisfied that "the issue involved" is so referable. The consistent singular usage—"the issue" and "any issue"—contemplates a mandatory stay only when *less than every* issue is referred to arbitration. Indeed, in the very next section, the drafters—as they could have in § 3—refer to "the issue *or issues*" being submitted to a jury in cases where there is a material question of fact as to whether the parties agreed to arbitrate. *See* 9 U.S.C. § 4 (emphasis added). Viewing the statute's text as a whole, it is apparent that the drafters intended § 3's mandatory stay language to apply only where fewer than all of the claims are referred to arbitration.